# IN THE SUPREME COURT OF IOWA

No. 54 / 07–0178

Filed July 25, 2008

**STATE OF IOWA,**

Appellant,

vs.

**ROBERT GLEE HELMERS,**

Appellee.

Appeal from the Iowa District Court for Story County, Lawrence E. Jahn, District Associate Judge.

State appeals district court's ruling to bifurcate trial. **AFFIRMED IN PART; REVERSED IN PART; CASE REMANDED.**

Thomas J. Miller, Attorney General, Kevin Cmelik and Laura M. Roan, Assistant Attorneys General, and Stephen H. Holmes, County Attorney, for appellant.

William T. Talbot of Newbrough, Johnston, Brewer, Maddux & Howell, L.L.P. Ames, for appellee.

**STREIT, Justice**.

Robert Helmers was charged with stalking a woman while subject to a no-contact order. The existence of a no-contact order elevates the crime of stalking from an aggravated misdemeanor to a class "D" felony. Helmers moved to bifurcate the trial so that evidence of the no-contact order would not be presented to the jury unless it first found him guilty of stalking. The district court granted Helmers' motion, and the State sought interlocutory appeal. We find the district court abused its discretion in bifurcating the trial because the probative value of the no-contact order is not substantially outweighed by the danger of unfair prejudice. We also conclude the district court appropriately postponed ruling on the admissibility of Helmers' other alleged prior bad acts toward the woman because specific misconduct was not presented to the court to review.

### I. Facts and Prior Proceedings.

Rosemary Swenson and Helmers had a relationship, which she apparently ended. At some point, Helmers began to bother Swenson who reported Helmers' conduct to the police. In April 2005, Helmers was charged with harassment, a simple misdemeanor, for giving Swenson "the finger" at the local Wal-Mart store. In June, the State also charged Helmers with stalking Swenson, an aggravated misdemeanor. Helmers pled guilty to harassment in September 2005, and the stalking charge was dropped. Helmers was placed on probation, and a no-contact order was issued.

A year later, Helmers was arrested again for stalking Swenson. This time the stalking charge was a class "D" felony because Helmers allegedly committed stalking while subject to the restrictions of a protective order. *See* Iowa Code § 708.11(3)(*b*)(1) (2005). Helmers filed

several motions to exclude evidence and asked for his trial to be bifurcated. Helmers sought to exclude from trial evidence of the no-contact order, evidence of the harassment conviction, as well as evidence of his "unproven" conduct prior to the filing of charges in 2005. He argued the State should only be allowed to present evidence of the no-contact order if the jury first finds him guilty of stalking.

The district court granted Helmers' motion to bifurcate the trial and further held the State may not present any evidence of Helmers' prior conviction for harassment or the existence of the no-contact order. The district court declined to rule before trial on the admissibility of Helmers' alleged prior conduct.

We granted the State's request for discretionary review on the ruling to bifurcate the trial. We also granted Helmers' cross-appeal on the ruling regarding his past conduct. For the reasons that follow, we reverse the decision to bifurcate the trial and affirm the decision to postpone ruling on the admissibility of the prior conduct.

## II. Scope of Review.

We review decisions on bifurcation for abuse of discretion. *See Briner v. Hyslop,* 337 N.W.2d 858, 870 (Iowa 1983). Similarly, we generally review evidentiary rulings for abuse of discretion. *Vasconez v. Mills*, 651 N.W.2d 48, 55 (Iowa 2002). *But see State v. Musser*, 721 N.W.2d 734, 751 (Iowa 2006) (stating the standard of review for admission of alleged hearsay evidence is for correction of errors at law). "A court abuses its discretion when it exercised its discretion on 'grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *In re J.A.L.,* 694 N.W.2d 748, 751 (Iowa 2005) (quoting *State v. Maghee,* 573 N.W.2d 1, 5 (Iowa 1997)).

### III.  Merits.

### A.  Whether it was an abuse of discretion to bifurcate the trial.

A person commits stalking when all of the following occur:

> *a.* The person purposefully engages in a course of conduct directed at a specific person that would cause a reasonable person to fear bodily injury to, or the death of, that specific person or a member of the specific person's immediate family.
>
> *b.* The person has knowledge or should have knowledge that the specific person will be placed in reasonable fear of bodily injury to, or the death of, that specific person or a member of the specific person's immediate family by the course of conduct.
>
> *c.* The person's course of conduct induces fear in the specific person of bodily injury to, or the death of, the specific person or a member of the specific person's immediate family.

Iowa Code § 708.11(2).  " 'Course of conduct' means repeatedly maintaining a visual or physical proximity to a person without legitimate purpose or repeatedly conveying oral or written threats, threats implied by conduct, or a combination thereof, directed at or toward a person." *Id.* § 708.11(1)(*b*).

A person who satisfies these three elements commits an aggravated misdemeanor.  *Id.* § 708.11(3)(*c*).  The crime is elevated to a class "D" felony if "[t]he person commits stalking while subject to restrictions contained in a criminal or civil protective order or injunction, or any other court order which prohibits contact between the person and the victim."  *Id.* § 708.11(3)(*b*)(1).

The State contends it is not appropriate to bifurcate elements of a single offense.  Thus, we must first determine whether the existence of a no-contact order is an element of stalking.  In *State v. Beecher*, 616 N.W.2d 532 (Iowa 2000), we said the existence of a no-contact order is "simply a sentencing enhancement" and not an element of stalking.

*Beecher*, 616 N.W.2d at 538. This holding is not valid in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed 2d 435 (2000). There, the Supreme Court effectively eliminated the distinction between "elements" and "sentencing factors," calling the distinction "novel and elusive." *Id.* at 494, 120 S. Ct. at 2365, 147 L. Ed. 2d at 457. The Court held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S. Ct. at 2362–63, 147 L. Ed. 2d at 455. Thus, the existence of a no-contact order is an element of the crime for which Helmers was charged.

*Apprendi*, however, did not address bifurcating elements of a single offense. Our rules of criminal procedure do not address this issue either. Rule 2.6(1) only provides the district court with discretion to bifurcate multiple offenses. Rule 2.19(9) requires a prior conviction be submitted to the jury after conviction of the primary or current offense if the prior conviction subjects the defendant to an increased sentence. A no-contact order is not a prior conviction although, as in this case, it may stem from one. For purposes of this case, we need not decide whether it is ever appropriate to bifurcate elements of a single offense. Assuming *arguendo* courts have inherent authority to do so, we find the district court abused its discretion in granting Helmers' request to bifurcate the trial.

According to the court's ruling, the fact finder would have to find the State proved the first three elements of stalking beyond a reasonable doubt before hearing any evidence regarding the existence of the no-contact order. The court reasoned this was necessary because "the jury might infer, from the existence of the no-contact order, that [Helmers]

was guilty on a prior occasion of stalking or other proscribed acts against the accuser and thus is more likely to have committed the act for which he is being tried." Although acknowledging the no-contact order was relevant to the stalking charge, the court found "the probative value of such evidence would, in this case, be outweighed by the danger of unfair prejudice." We disagree.

The district court's refusal to allow the State to use the no-contact order to prove stalking was clearly unreasonable. Certainly evidence is not admissible if it is only relevant to show a defendant "is a bad person and worthy of conviction." *State v. Delaney*, 526 N.W.2d 170, 175 (Iowa Ct. App. 1994) (citing *State v. Cott*, 283 N.W.2d 324, 326 (Iowa 1979)). However, "[e]vidence of other crimes, wrongs, or acts" may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Iowa R. Evid. 5.404(*b*). Here, the no-contact order was more than just a basis to enhance punishment. It was a key piece of evidence to prove one of the elements of stalking—i.e., Helmers "ha[d] knowledge or should have [had] knowledge that [Swenson] [would] be placed in reasonable fear of bodily injury . . . by [his] course of conduct." Iowa Code § 708.11(2); *see* Iowa R. Evid. 5.401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). " 'A stalker should know that his actions are unappreciated if he was served with a court order or if he was told by the victim that she no longer wishes to be contacted.' " *State v. Neuzil*, 589 N.W.2d 708, 712 (Iowa 1999) (quoting Christine B. Gregson, Comment, *California's Antistalking Statute: The Pivotal Role of Intent*, 28 Golden Gate U. L. Rev. 221, 245 (1998)); *see*

*also State v. Taylor*, 689 N.W.2d 116, 123 n.4 (Iowa 2004) (stating the defendant's awareness of a no-contact order, "which was sought by his wife and prohibited him from having contact with his wife and children, is highly probative of whether he knew his actions would be insulting or offensive to his wife"). Thus, we agree with the district court this evidence was relevant for purposes other than proving Helmers' character.

However, we disagree with the district court's rule 5.403 balancing analysis. Under rule 5.403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." "Unfair prejudice arises when the evidence would cause the jury to base its decision on something other than the proven facts and applicable law, such as sympathy for one party or a desire to punish a party." *Taylor*, 689 N.W.2d at 124. When making the determination whether unfair prejudice generated by the evidence of defendant's prior misconduct substantially outweighs the probative value of the evidence, we consider:

> the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis.

*Id.*

As we have already indicated, the evidence at issue here is likely the best evidence to prove Helmers knew or should have known Swenson would be placed in reasonable fear of bodily injury or death with his course of conduct. Thus, it is highly probative in the stalking trial. The likelihood the jury will use the evidence improperly can be lessened with a jury instruction on the limited use of the no-contact order. *Delaney*,

526 N.W.2d at 176 (citing *State v. Conner*, 314 N.W.2d 427, 429 (Iowa 1982)). We find the district court acted unreasonably by denying the State the use of this evidence.

**B. Whether it was an abuse of discretion to deny Helmers' motion in limine regarding prior bad acts.** Helmers complains the district court should have held his alleged prior bad acts were not admissible at trial. He claims his first stalking charge in 2005 was based on a series of "unproven" misconduct. He argues, "if the alleged and unproven conduct comes before the jury and [he] is convicted, he will have been convicted twice for the same conduct and then punished twice for the same conduct", in violation of the Fifth Amendment's Double Jeopardy Clause. We find this argument wholly without merit.

Before going any further, we must first explain the record lacks reference to specific instances of alleged prior bad acts. In his motion in limine, Helmers simply claimed any alleged misconduct that occurred prior to the State charging him with harassment and stalking in 2005 is inadmissible because that conduct was part of his guilty plea.

The Fifth Amendment provides no person "shall be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This clause protects against the following: "(1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *State v. McKettrick*, 480 N.W.2d 52, 56 (Iowa 1992) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656, 664–65 (1969)). The Double Jeopardy Clause applies to state criminal proceedings through the Fourteenth Amendment. *State v. Dixon*, 534 N.W.2d 435, 439 (Iowa 1995) (citing *Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 2062, 23 L. Ed. 2d 707, 716 (1969)).

Assuming for the sake of argument Helmers has already been in "jeopardy" for the prior misdeeds he seeks to exclude, the current charge is not based on the same conduct. He pled guilty to harassment in 2005. The current stalking charge stems from conduct that allegedly occurred between April 2006 and July 2006. He has never been put in "jeopardy" for this conduct. The State is not trying to convict him for conduct that allegedly occurred in 2005 or earlier. Instead, it merely seeks to use the evidence to prove Helmers' conduct in 2006 would place a reasonable person in fear. Evidence of previous interactions between Swenson and Helmers may be helpful to demonstrate the escalation of Helmers' behavior over time. *See State v. Evans,* 671 N.W.2d 720, 726 (Iowa 2003). Isolated instances of unwelcome conduct may not appear to a fact finder to be frightening. However, that view may change once the pattern of conduct and the victim's previous attempts to stop it are revealed.

The district court rightly rejected Helmers' double jeopardy argument and appropriately postponed ruling on the admissibility of Helmers' alleged misconduct in 2005. Ruling in the abstract would not have been appropriate. Once the specific instances of misconduct the State wishes to admit are known, the district court may evaluate each instance for relevance and potential unfair prejudice. We note the State also has the burden of presenting "clear proof" Helmers committed the acts in question. *State v. Johnson,* 224 N.W.2d 617, 620 (Iowa 1974).

## IV.    Conclusion.

The district court abused its discretion when it granted Helmers' motion to bifurcate his trial on stalking. The court did not abuse its discretion when it declined to rule on the admissibility of Helmers' unknown alleged prior misconduct.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except Baker, J., who takes no part.